IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GALAWEZH SHOWAN,      )
                          )
        Plaintiff,     )
                          )     CIVIL ACTION
v.                      )     FILE NO. 1:16-cv-00468-ODE
                          )
PATRICK PRESSDEE and     )
KRISPY KREME DOUGHNUT    )
CORPORATION,          )
                          )
        Defendants.   )

## PLAINTIFF'S MOTIONS IN LIMINE

COMES NOW, Plaintiff Galawezh Showan, and respectfully submits her Motions in Limine. Plaintiff moves in advance of the calling of the above-captioned case for trial to exclude the following evidence and/or direct and indirect argument or comments from counsel concerning the following matters:

## PLAINTIFF'S MOTIONS IN LIMINE NO. 1

**Plaintiff moves to exclude evidence of how Plaintiff's counsel was located and chosen by Plaintiff, and when Plaintiff's counsel was hired.** Under Federal Rules of Evidence, evidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly, and irrelevant matter should be excluded. *See* Fed. R. Evid. 401 and 402. "The time and circumstances under which

Plaintiffs hired their counsel, the length of time between the accident and the filing of this action, and the number of times that Plaintiffs changed lawyers all are irrelevant." *Bunch v. Pacific Cycle, Inc.*, No. 2015 WL 11622954, *7 (N.D.Ga April 27, 2015) (granting a plaintiff's motion in limine, citing *Turner et al. v. W.E. Pruett Company, Inc. et al.*, 202 Ga.App. 287, 414 S.E.2d 248 (1991), where the Georgia Court of Appeals ordered a new trial after an erroneous ruling that the timing of the filing of a complaint was relevant in wrongful death suit).

Irrelevant matters such as how the Plaintiff found a lawyer, how Plaintiff chose a lawyer, and when Plaintiff hired a lawyer have no bearing on the issues being tried. Therefore, these matters should be excluded from evidence.

## PLAINTIFF'S MOTIONS IN LIMINE NO. 2

**Plaintiff moves to exclude evidence or reference to the fact or manner of compensation that Plaintiff's counsel may earn from representing Plaintiff and/or by obtaining a favorable verdict and damages award on her behalf, including the existence of any contingent fee arrangement.**

Where no claim for attorney's fees involved in a case, it is "totally improper" to introduce evidence or comment regarding the fact that plaintiff's counsel is employed pursuant to a contingent fee contract. See Fed. R. Evid. 403; *Stoner v. Eden,* 199 Ga. App. 135, 136-7 (1991).

Here, Plaintiff does intend to pursue attorneys' fees and litigation expenses under O.C.G.A. § 9-11-68(e). See (Doc. 83, p. 9); (Doc. 86, pp. 1-2, 8-12). However, that claim is ripened "[u]pon motion by the prevailing party at the time that the verdict or judgment is rendered," at which time "the court shall hold a separate bifurcated hearing" where the jury receives evidence to decide the claim. O.C.G.A. § 9-11-68(e). Accordingly, whether Plaintiff's counsel is working on a contingent fee basis has no potential relevance whatsoever during *at least* the liability and compensatory damages phase of the trial, and therefore any evidence or comment regarding such matters should be excluded pursuant to Rule 403.

Moreover, § 9-11-68(e) authorizes a jury to award "damages" "against" the Defendants should it determine at the bifurcated hearing that they "asserted frivolous claims or defenses." However, because the statute specifies the "[d]amages awarded *may include* reasonable and necessary attorney's fees and expenses of litigation," this necessarily means the amount of "damages awarded" by the jury "against" Defendants may also include a monetary penalty for their frivolous claims or defenses that is independent of any attorney's fees and litigation of expenses incurred. See § 9-11-68(e)(2).

As such, Defendants must also be prohibited from injecting any reference or evidence to a contingent fee arrangement during the *bifurcated hearing* held under

§ 9-11-68(e). Otherwise, Defendants could cite the contingent fee arrangement solely to prejudice the jury into improperly concluding that Plaintiff has "already covered" her attorney's fees and expenses with the compensatory damages verdict. This would be contrary to the intent of § 9-11-68(e), which seeks to deter and penalize parties by imposing damages upon them for their assertion of frivolous claims or defenses and the needless litigation, delay, harassment, and waste of time they caused.

Based on the foregoing, Plaintiff respectfully requests that this Court grant this motion in limine and thereby bar evidence or reference to the fact or manner of compensation Plaintiff's counsel may earn from representing Plaintiff and/or by obtaining a favorable verdict and damages award on her behalf, including the existence of any contingent fee arrangement, at least during the main trial, but also during the bifurcated hearing permitted under § 9-11-68(e).

## PLAINTIFF'S MOTIONS IN LIMINE NO. 3

Plaintiff asks that this Court prohibit any reference to the fact that these motions in limine were filed, or, in general, that Plaintiff filed a motion to keep certain evidence from going before the jury.

## PLAINTIFF'S MOTIONS IN LIMINE NO. 4

**Plaintiff moves to exclude any comment about the tax consequences of any possible recovery by the Plaintiff, including whether or not such sum may or may not be subject to federal income tax or any other form of taxation.** See Fed. R. Evid. 403; see also *Bunch v. Pacific Cycle, Inc.*, No. 2015 WL 11622954, *6 (N.D.Ga April 27, 2015) (granting motion in limine to exclude reference to the taxation of compensatory damages award) (citing *Consolidated Freightways Corp. of Del. v. Futrell*, 201 Ga.App. 233, 236, 410 S.E.2d 751, 754-55 (1991), where trial court properly refused to charge jury that any damages award would not be taxable).

## PLAINTIFF'S MOTIONS IN LIMINE NO. 5

**Plaintiff moves that no mention be made of the fact that the Plaintiff, by reason of age, infirmity or otherwise, may have received, is now receiving, or may be entitled to receive in the future, any government or public benefits, medical payments, sick leave payments, reduced cost for medical treatment, or any other form of financial assistance or benefit from any insurance company, medical provider, employer, government agency, or otherwise.**

In this case, any evidence or reference to such collateral sources should be strictly prohibited. The Georgia Supreme Court has repeatedly held that Georgia's Collateral Source Rule is rooted in public policy, and is thus primarily substantive

in nature. See *Amalgamated Transit Union Local 1324 v. Roberts*, 263 Ga. 405, 434 S.E.2d 450 (1993); *Denton v. Con–Way Southern Express*, Inc., 261 Ga. 41, 402 S.E.2d 269 (1991) (disapproved on other grounds, 262 Ga. 374); *Polito v. Holland*, 258 Ga. 54, 365 S.E.2d 273 (1988).

As such, Georgia law applies to exclude collateral source evidence even though this action was removed to federal court. See *Southern v. Plumb Tools, A Div. of O'Ames Corp.*, 696 F.2d 1321, 1323 (11th Cir. 1983) (permitting defendant to show a plaintiff received workers' compensation benefits *held* to "undermine the substantive collateral source doctrine because such evidence is considered unquestionably prejudicial to the plaintiff's case."); *Macsenti v. Becker*, 237 F.3d 1223, 1241 (10th Cir. 2001) ("The admissibility of evidence in diversity cases in federal court is generally governed by federal law. Nevertheless, it is well recognized that Congress did not intend the procedural rules to preempt the so-called 'substantive' state rules of evidence, such as … *the collateral source rule*[;] although the application of these rules will affect the admissibility of some evidence, they in reality serve substantive state policies regulating private transactions.") (quoting *Blake v. Alexander*, 152 F.3d at 1231 (10th Cir. 1998); *Westchester Specialty Ins. Servs., Inc. v. U.S. Fire Ins. Co.*, 119 F.3d 1505, 1512 n.13 (11th Cir. 1997) ("In tort

cases, Georgia's collateral source rule prevents the reduction of a party's liability by payments or benefits that the injured party received from collateral sources.").

Accordingly, any evidence or reference to collateral sources and benefits that Plaintiff has received or may receive should be strictly prohibited. Plaintiff further requests that the Court require Defendants' counsel to advise and instruct each witness as to the Court's ruling on this motion prior to counsel calling them to testify.

## PLAINTIFF'S MOTIONS IN LIMINE NO. 6

**Plaintiff moves that no mention be made of any supposed general or specific effects or consequences of a claim, suit, or judgment upon things like:**

- **insurance rates, premiums, etc.**

- **the cost of goods or services;**

- **business revenue or profits;**

- **employment gains or losses;**

Regardless of whether such claims are made in reference to Defendants specifically or to society in general, such evidence or argument is purely and blatantly prejudicial and must be excluded pursuant to Rule 403. See *Roy v. Employers Mut. Cas. Co.*, 368 F.2d 902, 904-05 (5th Cir. 1966) (defense counsel's urging the jury "don't punish the insurance premium payers" was improper and "calculated to appeal to that personal interest which jurors have in not increasing their own insurance

expenses"); *Rebolledo v. Herr-Voss Corp*., 101 F.Supp.2d 1034 (N.D. Ill., 2000) (granting motion in limine to exclude evidence or argument that a judgment would financially harm the defendant or the jury, finding "[s]uch evidence is not relevant and would only appeal to sympathy of the jury"). Accordingly, Plaintiff asks the Court to grant this motion in limine to bar the Defendants from making such references, presenting such arguments, or attempting to introduce such evidence.

## PLAINTIFF'S MOTIONS IN LIMINE NO. 7

Plaintiff moves to exclude any reference or suggestion as to the existence or the contents of any photograph, motion picture, film, or videotape until the same has been tendered to the Court and each opposing counsel, outside the presence of the jury, as shown or exhibited to determine its relevance and suitability for introduction into evidence.

## PLAINTIFF'S MOTIONS IN LIMINE NO. 8

**Plaintiff moves to exclude evidence of the prior criminal record of any party or witness.** A witness cannot be impeached by evidence of a criminal conviction unless the evidence meets the requirements of Rule 609. While Plaintiff is unaware of any witness with a criminal history that could trigger Rule 609, she nevertheless moves to exclude such evidence out of an abundance of caution.

## PLAINTIFF'S MOTIONS IN LIMINE NO. 9

**Plaintiff moves to exclude evidence regarding any prior or subsequent motor vehicle accident, claim, or lawsuit that did not result in any relevant injuries or damages to Plaintiff.**  Under the Federal Rules of Evidence, evidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly, and irrelevant matter should be excluded. See Fed. Rs. Evid. 401, 402. Thus, any subsequent incident or accident that did not result in any relevant injuries or damages to Plaintiff is irrelevant and should be excluded from evidence pursuant to the Federal Rules of Evidence. See *id.*

Plaintiff knows of no such prior or subsequent motor vehicle accident, claim or incident that is relevant, but if Defendant disagrees, Plaintiff moves that Defendants be required to demonstrate the relevance of any prior or subsequent incident before mentioning it or referring to it in the presence of the jury.

## PLAINTIFF'S MOTIONS IN LIMINE NO. 10

**Plaintiff moves in limine to exclude any evidence, testimony, argument, comment, reference, or questioning of witnesses that seeks to assert speculative and alternative theories of medical causation that cannot be proven by a preponderance of the evidence.**  It is a common defense strategy in the trial of a personal injury case to raise so-called "alternative theories of causation" for a

9

plaintiff's injuries and damages. This Court should prohibit Defendants from making such assertions unless they demonstrate the ability to prove any such alternative theory by a preponderance of the evidence.

In civil cases pending in federal court based on diversity jurisdiction, state law governs the burden of proof for the substantive elements of the parties' claims or defenses. See Fed. R. Evid. 302; see also *1972 Adv. Comm. Notes for Rule 302* (citing numerous US Supreme Court decisions applying the *Erie* doctrine to determine the burden of proof in diversity cases, and noting "[i]n each instance, the state rule was held to be applicable" because "the burden of proof question had to do with a substantive element of the claim or defense").

The well-established substantive law in Georgia concerning the element of injury causation is that while "the ultimate burden of proof on the issue of causation is upon the plaintiff [to] demonstrate that his or her injuries were caused by the defendant's negligence … [t]he defendant, however, bears the burden of proving any alternative theories of causation that he presents." *Moresi v. Evans*, 257 Ga.App. 670, 676-77, 573 S.E.2d 327, 333 (2002); *Steele v. Atlanta Maternal Fetal Medicine, P.C.,* 271 Ga.App. 622, 625, n. 3, 610 S.E.2d 546, 550 (2005), overruled on other grounds, *Smith v. Finch*, 285 Ga. 709, 681 S.E.2d 147 (2009); *Williams v. Capitol Corp. Cleaning, Inc.*, 313 Ga.App. 61, 64-65, Fn. 12 (2011). See also generally

O.C.G.A. § 24-14-1 ("The burden of proof generally lies upon the party who is asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential. If a negation or negative affirmation is essential to a party's case or defense, the proof of such negation or negative affirmation shall lie on the party so affirming it."). This is consistent with the longstanding Georgia rule that "the *possibility* of a causal relation ... is not sufficient, *standing alone*, to establish such relation." *Estate of Patterson v. Fulton-DeKalb Hosp. Authority*, 233 Ga.App. 706, 708, 505 S.E.2d 232, 235 (1998) (emphasis in original).

Thus, unlike criminal cases where an accused can attempt to show reasonable doubt with unsupported "whodunit" theories, a defendant in a civil case must present credible and independent evidence before he can point the finger at someone or something else as an alternative cause of a plaintiff's injuries. An unsupported theory that amounts to nothing more than "a mere possibility of such causation is not enough" in Georgia. *Wilson v. Allen*, 272 Ga. App. 172, 174, 612 S.E.2d 39, 41 (2005). Otherwise, a defendant could freely mislead jurors with rank speculation and conjecture about what happened to the plaintiff, which is clearly contrary to the law.

If Defendants desire to assert an alternative theory of causation, substantive Georgia law requires they carry the burden to prove such theory by a preponderance of the evidence. Rank speculation and conjecture cannot carry that burden. For these

reasons, Plaintiff respectfully requests this motion be granted and that Defendant s be prohibited from suggesting or arguing alternative theories of causation that are not supported by credible, independent, and admissible evidence.

## PLAINTIFF'S MOTIONS IN LIMINE NO. 11

**Plaintiff moves that Defendants not mention any prior non-compensable injuries, diseases, conditions or illnesses that are wholly disassociated from and do not relate to or serve as a "sole or contributing cause" defense to the Plaintiff's present claim for compensation, and that any Defendant cannot medically associate and relate to the injuries sustained as a result of the incident in this case.** See generally Fed. R. Evid. 403. See also *Estate of Patterson v. Fulton-DeKalb Hosp. Authority*, 233 Ga.App. 706, 708, 505 S.E.2d 232, 235 (1998) (citing longstanding Georgia law that provides "the *possibility* of a causal relation ... is not sufficient, *standing alone*, to establish such relation.") (emphasis in original).

## PLAINTIFF'S MOTIONS IN LIMINE NO. 12

**Plaintiff moves in limine to exclude any evidence, testimony, argument, comment, reference or questioning of witnesses as to the alleged "societal costs" of tort, personal injury, and/or medical malpractice claims or lawsuits or the supposed consequences of an adverse verdict on the Defendants, the civil justice system, the health care industry, society, and/or the public.**  Plaintiff anticipates

12

that Defendants and/or their counsel may attempt to improperly prejudice the jury by introducing evidence or testimony, arguing, commenting, referencing, or questioning witnesses as to the "societal costs" of tort actions, claims, and/or lawsuits, and in particular, personal injury and medical malpractice claims or lawsuits.  This includes references to the purported effect such actions have as to:

(a) a supposed epidemic of "frivolous lawsuits" or "lawsuit lottery;"

(b) "overburdened courts" due to a "flood of litigation;"

(c) negative effects on "taxpayers" and the "working class;"

(d) supposedly increasing the costs associated with the purchase and maintenance of liability insurance for doctors and other medical providers;

(e) supposedly increasing the costs of health insurance premiums and medical treatment for the general public;

(f) supposedly influencing how or why doctors and other medical providers administer or perform medical treatment and medical procedures (i.e., so-called "preventative medicine);

(g) the supposed effect of such claims or lawsuits, or an adverse verdict, upon the financial status and/or reputation of the Defendants, medical providers, or the medical community at large.

Such matters are irrelevant and immaterial to the factual and legal issues that the jury will be required to decide, and could only be intended to unduly prejudice and bias the jury against both Plaintiff and the civil justice system itself.  See *Roy v. Employers Mut. Cas. Co.*, 368 F.2d 902, 904-05 (5th Cir. 1966) (defense counsel's urging the jury "don't punish the insurance premium payers" was improper and "calculated to appeal to that personal interest which jurors have in not increasing their own insurance expenses"); *Rebolledo v. Herr-Voss Corp.*, 101 F.Supp.2d 1034 (N.D. Ill., 2000) (granting motion in limine to exclude evidence or argument that a judgment would financially harm the defendant or the jury, finding "[s]uch evidence is not relevant and would only appeal to sympathy of the jury").

Accordingly, Plaintiff asks the Court to grant this motion in limine to bar the Defendants from making such references, presenting such arguments, or attempting to introduce such evidence.

## PLAINTIFF'S MOTIONS IN LIMINE NO. 13

**Plaintiff moves in limine to preclude Defendants' so-called "medical billing experts" Lamar Blount and Jessica Schmor (and any other witnesses), from (1) referencing blatantly prejudicial, irrelevant, and inadmissible collateral sources, and/or (2) testifying to the ultimate issue.** Defendants wish to have Mr. Blount and Ms. Schmor testify that Plaintiff's medical expenses were

14

excessive and unreasonable because they differ from reimbursement and payment rates used by Medicare, Medicaid, and other irrelevant sources.

For example, during his recent evidentiary deposition, Mr. Blount repeatedly referenced Medicare, Medicaid, the Center for Medicare and Medicaid Services ("CMS"), the US Dept. of Veteran Affairs ("VA"), health insurers, and the health insurance industry in general. See **Exhibit "A"** (*Blount Deposition*), e.g. at pp. 13, 16, 17, 33, 52, 91-92, 134-136. The similar (and clearly cumulative) testimony of Jessica Schmor, whom Mr. Blount essentially "recruited" into this case in order to augment his own testimony, also contains these same repeated references – while disingenuously framing her testimony as an effort to show "health care fraud." See **Exhibit "B"** (*Schmor Deposition*) e.g. at pp. 8-9, 17-21, 24-25, 29, 31-33, 38, 82-90, 184. Defendants offer this tandem testimony with the intent of persuading the jury that "Plaintiff's medical bills are too high because Medicare, the VA, or Acme Insurance Company thinks so, and/or they do not pay as much for the treatment Plaintiff had." Such testimony poses a cascade of significant problems and violates a litany of evidentiary rules, while improperly attempting to answer the ultimate issue and obscuring Georgia law governing the recovery of medical expenses.

*First*, such testimony flouts and violates Georgia's Collateral Source Rule. As discussed *infra* in Plaintiff's Motion in Limine No. 5, Georgia's Collateral Source

Rule is rooted in public policy, and thus primarily substantive in nature. See *Amalgamated Transit Union Local 1324 v. Roberts*, 263 Ga. 405, 434 S.E.2d 450 (1993); *Denton v. Con–Way Southern Express, Inc.*, 261 Ga. 41, 402 S.E.2d. 269 (1991) (disapproved on other grounds, 262 Ga. 374); *Polito v. Holland*, 258 Ga. 54, 365 S.E.2d 273 (1988). Thus, it applies in this removed action. See *Southern v. Plumb Tools, A Div. of O'Ames Corp.*, 696 F.2d 1321, 1323 (11th Cir. 1983) (permitting evidence of plaintiff's workers' comp benefits held to "undermine the substantive collateral source doctrine because such evidence is considered unquestionably prejudicial"); *Macsenti v. Becker*, 237 F.3d 1223, 1241 (10th Cir. 2001) (recognizing substantive state rules of evidence like the collateral source rule are not preempted by the federal rules, as the former exist to "serve substantive state policies regulating private transactions.")

Georgia's Collateral Source Rule is frequently explained as follows:

The common law rule in Georgia bars the defendant from presenting any evidence as to payments of medical, hospital, disability income, or other expenses of a tortious injury paid for by a plaintiff, governmental entity, or third party and taking credit towards the defendant's liability in damages for such payments, because a tortfeasor is not allowed to benefit by its wrongful conduct or mitigate its liability by collateral sources provided by others.

The common law rule made no exceptions for the introduction of evidence as to a collateral source, which rule remains applicable today.

*Olariu v. Marrero*, 248 Ga.App. 824, 825, 549 S.E.2d 121, 122-23 (2001) (citing *Candler Hosp., Inc. v. Dent*, 228 Ga.App. at 421, 491 S.E.2d 868 (1997). Or, as the Eleventh Circuit has recognized: "In tort cases, Georgia's collateral source rule prevents the reduction of a party's liability by payments or benefits that the injured party received from collateral sources." *Westchester Specialty Ins. Servs., Inc. v. U.S. Fire Ins. Co.*, 119 F.3d 1505, 1512 n.13 (11th Cir. 1997).

Here, Plaintiff's medical expenses in this case were undisputedly not paid in full or in part by a "governmental entity or third party" organization like CMS or the VA. Yet, Defendants are seeking via the testimony of Mr. Blount and Ms. Schmor to have the jury treat them a*s if they were, or could have been,* paid by those organizations, and thereby reduce Plaintiffs' medical bills in the same manner as if they had in fact been considered or paid by those organization. In other words, Defendants are employing a back-door tactic that seeks to indirectly accomplish what the Collateral Source Rule would never permit them to do directly.

The obvious intent of this tactic is to prejudice the jury into improperly reducing Plaintiff's recoverable medical expenses while alleviating Defendants' liability for them. These two aims are precisely what the Collateral Source Rule absolutely prohibits. Indeed, for "[o]ver 100 years" the Supreme Court of Georgia has recognized "the infectiously prejudicial effect of admitting collateral sources."

17

*Denton*, supra, 261 Ga. at 42. This explains why, in case after case, Georgia courts have rejected a variety of creative attempts to erode this rule. See *Andrews v. Ford Motor Co.*, 310 Ga.App. 449, 451, 713 S.E.2d 474, 476-77 (*Held:* Collateral Source Rule barred defendant from offering evidence that plaintiff was compensated by insurers); *Whelchel v. Thomas Ford Tractor, Inc.*, 190 Ga.App. 156, 156(1), 378 S.E.2d 510 (1989) (*Held*: trial court erred in admitting evidence of Social Security and workers' compensation benefits and by charging jury they could consider in when awarding damages); *Worthy v. Kendall*, 222 Ga.App. 324, 325, 474 S.E.2d 627, 629 (1996) (disability payments inadmissible); *Olariu,* supra, 248 Ga.App. at 825-26 (affirming trial court's refusal to allow hospital's "write-offs" of plaintiff's medical bills into evidence).

Defendants' illicit purpose is also diametrically opposed to the public policy goals of the Collateral Source Rule. "[I]t is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor" because "[i]t is the tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives." *Amalgamated Transit Union Local 1324* at 406(1) (quoting Restatement (Second) of Torts § 920A comment (b), p. 514). This "prophylactic" purpose for the collateral source rule is a recognition that "courts are concerned not only with compensation

18

of the victim, but with admonition of the wrongdoer." *Id*. So entrenched in public policy is the Collateral Source Rule that a prior attempt to abrogate it by legislative statute failed, as the Georgia Supreme Court struck down the effort as a violation of the Georgia Constitution.   See *Denton* at 46 (holding O.C.G.A. § 51-12-1(b) unconstitutional).

**Second,** the fact that (1) sources like Medicare, Medicaid, the VA, or whatever health insurer Mr. Blount or Ms. Schmor may cite, did not pay a cent of Plaintiff's medical bills, (2) combined with the fact that Defendants cannot show Plaintiff was even eligible for such benefits or assistance from these sources, or (3) that her particular medical providers actually accepted these sources as payment, renders the discussion of them all the more irrelevant, prejudicial, confusing, and needlessly wasteful of time. See Fed. R. Evid. 403. Indeed, when Defendants asked the billing manager of one of Plaintiff's medical providers if they accepted Medicare or Medicaid as payment, she stated they did not. See *Excerpts from Janessa Hastings Dep.*, attached as **Exhibit "C,"** at transcript pp. 13, 25. Because this was the only such deposition Defendants took during this case, Defendants cannot begin to establish the relevancy of such sources for *any* of Plaintiff's medical providers.

**Third,** testimony by Mr. Blount or Ms. Schmor to the effect that "Medicare would pay $____ for this procedure Plaintiff had" or "the VA would consider $____

an unreasonable charge for this treatment Plaintiff had" improperly encroaches on the ultimate issue the jury must decide, and it does so with irrelevant, unhelpful, and hardly-analogous information. See Fed. Rs. Evid. 401, 403, 704. Georgia law authorizes the recovery of all reasonable and necessary medical expenses. See e.g., *Piggly-Wiggly Southern, Inc. v. Tucker*, 139 Ga.App. 873, 877, 229 S.E.2d 804, 807 (1976). Under Georgia law, a jury does not need expert testimony to decide whether claimed medical bills satisfy the "reasonable and necessary" standard; rather, all that is required is "a showing … that such bills were received from a licensed practicing physician, hospital, ambulance service, drug store, or supplier of therapeutic or orthopedic devices, and that such expenses were incurred in connection with the treatment of the injury, disease or disability involved in the subject of litigation at trial." *Lester v. S.J. Alexander*, 127 Ga.App. 470, 193 S.E.2d 860 (1972). See also O.C.G.A. § 24-9-21.

Blount and Schmor's testimony does not go to the standard of Georgia law; instead, it goes to prejudice the jury against it. How or why CMS or the VA determines the reasonable cost or reimbursement rate for a medical expense claimed by *their eligible member-beneficiaries* cannot be allowed to supplant the duty of the jury to decide *this Plaintiff's* medical expenses under admissible evidence and without consideration of what such irrelevant third-party (and collateral) sources

20

might decide in a different scenario and for different reasons. In other words, Blount and Schmor's *ad nauseum* references to such sources is nothing more than an extremely prejudicial effort to distract the jurors into ignoring Georgia law when they make their decision, with the hope that they instead replace their judgment with the uniquely political, regulatory, budgetary, and other special interests that influence how CMS, the VA, or a health insurer reaches an entirely separate and distinct decision. The fact these organizations are obviously being referenced to exploit their authoritative status or policymaking role only amplifies the prejudice.

Based on the foregoing, Plaintiff respectfully requests that this Honorable Court grant this motion in limine and require Defendants to delete, redact, or otherwise remove Mr. Blount and Ms. Schmor's repeated references to Medicare, Medicaid, CMS, the US Dept. of Veterans Affairs, the insurance industry, various health insurance companies, and similar references (including Ms. Schmor's oft-mentioned references to "health care fraud" – see **Ex. B** at pp. 8-9, 17-21, 24-25, 29, 31-32, 184) from their evidentiary depositions before they are played for the jury. Should Defendants instead opt to call either witness live, Plaintiff asks that the witnesses be admonished from making such references in the presence of the jury. Likewise, Plaintiff also asks that the Court order that Defendants must themselves

refrain from arguing, referencing, or questioning any witnesses regarding such matters for any purpose during trial.

## PLAINTIFF'S MOTIONS IN LIMINE NO. 14

**Plaintiff moves in limine to exclude Defendants' use of or reference to any demonstrative evidence or exhibits that:**

(1) **Defendants did not disclose as "exhibits that will be used to summarize or support" the testimony of an expert, as required by Fed. R. Civ. 26(a)(2)(B)(iii);**

(2) **are not shown or published to Plaintiffs' counsel before their first use in the presence of the jury, so that Plaintiff first has an opportunity to object and secure a ruling from the Court.**

During the recent evidentiary depositions of Defendants' specially-retained physician expert Dr. Tareq Javed, Defendants' counsel and Dr. Javed repeatedly referenced and utilized a Powerpoint presentation that had never before been shown or disclosed to Plaintiff.

It is basic discovery law that "any exhibits that will be used to summarize or support" the testimony of a specially-retained expert must be disclosed with that expert's report. Fed. R. Civ. P. 26(a)(2)(B)(iii). The rule makes no exception on the

type of exhibit, or whether it was prepared by the expert or by counsel on the expert's behalf; it still must be disclosed.

Defendants filed Dr. Javed's report on *January 20, 2017*. (Doc. 47 at pp. 5-12). Nowhere in his report, nor anywhere else in the record, is there any mention of the Powerpoint presentation, much less the actual production of it to Plaintiff, until its contemporaneous use by Defendants during the direct examination of Dr. Javed at his evidentiary deposition *approx. nine months later on October 4, 2017*. (Doc. 94). Before then, Defendants had never shown a single slide of the Powerpoint to Plaintiff or her counsel.[1]

So recent was Dr. Javed's evidentiary deposition that Plaintiff has not yet received the transcript or video of it to present to the Court with this motion in limine. Once the Court is able to review the same, it will be patently obvious that Defendants flagrantly violated this rule and withheld clearly discoverable materials. Plaintiff therefore moves to wholly exclude the Powerpoint exhibit that Defendants disclosed for the first time during the direct examination of Dr. Javed, as well as all testimonial references to the exhibit that occurred during the deposition and any images of the exhibit that appear on any video that could played by the jury.

---

[1] By contrast, Plaintiff had various medical illustrations created for future use during the direct examination of her treating physician Dr. Oskouei, and properly disclosed those illustrations to Defendants months ago when Dr. Oskouei's report was filed.

Second and similarly, Plaintiff asks that the Court require the Parties to show any demonstrative evidence or exhibits to the opposing party prior to the same being shown or published to the jury at trial.

## CONCLUSION & PRAYER FOR RELIEF

As set forth above, Plaintiff respectfully requests that this Honorable Court GRANT her foregoing motions in limine.

Respectfully submitted this 21st day of October, 2017.

**SLAPPEY & SADD, LLC**

*/s/ Edward M. Wynn*
JAMES (JAY) SADD, ESQ.
Georgia State Bar No. 622010
EDWARD M. WYNN, ESQ.
Georgia State Bar No. 557305
Attorneys for Plaintiff

SLAPPEY & SADD, LLC
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677- Office
(404) 255-7340- Facsimile
jay@lawyersatlanta.com
edward@lawyersatlanta.com

## <u>CERTIFICATE OF SERVICE</u>

The foregoing **Plaintiff's Motions in Limine** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record in this action listed below.  I further certify that the forgoing was prepared in Times New Roman 14pt and otherwise complies with Local Rule 5.1.

Carrie L. Christie, Esq.
Emily Y. Wang, Esq.
RUTHERFORD & CHRISTIE, LLP
225 Peachtree Street
South Tower, Suite 1750
Atlanta, Georgia 30303
*Counsel for Defendants*

Talal (Perez) Ghosheh, Esq.
GHOSHEH LAW FIRM, LLC
242 South Culver Street, Suite 200
Lawrenceville, Georgia 30046
*Co-Counsel for Plaintiff*

Respectfully submitted this 21st day of October, 2017.

*/s/ Edward M. Wynn*
EDWARD M. WYNN, ESQ.
Georgia State Bar No. 557305
Attorneys for Plaintiff

25